# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

AMBER ORLANDO,

        Plaintiff,

v.                                              Case No: 2:16-cv-443-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

---

## OPINION AND ORDER

Plaintiff Amber Orlando seeks judicial review of the denial of her claims for child's insurance benefits ("CIB") and supplemental security income ("SSI") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed the record, the briefs and the applicable law. For the reasons discussed herein, the decision of the Commissioner is **REVERSED**, and this matter is **REMANDED** pursuant to 42 U.S.C. § 405(g), sentence four.

## I.     Issues on Appeal[1]

Plaintiff raises three issues[2] on appeal: (1) whether substantial evidence supports the assessment of the Administrative Law Judge ("ALJ") of Plaintiff's credibility; (2) whether the ALJ properly evaluated the opinion evidence; and (3)

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

[2] For clarity and judicial efficiency, the Court will discuss Plaintiff's issues in a different order than presented in her brief.

whether the residual functional capacity ("RFC") assessment is supported by substantial evidence.

## II.     Procedural History and Summary of the ALJ's Decision

On March 10, 2012 and April 4, 2012, Plaintiff protectively filed applications for SSI and CIB, respectively.   Tr. 201-16.   The protective filing date for both applications was February 8, 2012.   Tr. 17.   Plaintiff alleged disability beginning on February 8, 2012 due to epilepsy, asthma, seizures-petite mal and epileptic and polycystic ovary syndrome.   Tr. 231.   The claims were denied initially and upon reconsideration.   Tr. 156-61, 166-70, 172-76.   Plaintiff requested a hearing before an ALJ and received a hearing before ALJ Maria C. Northington on July 14, 2014. Tr. 186-90.   Plaintiff, who was represented by an attorney, and vocational expert ("VE") Otis Pearson appeared and testified at the hearing.   *See* Tr. 55-111.

On December 12, 2014, the ALJ issued a decision finding Plaintiff not to have been under a disability from February 8, 2012, through the date of the decision.   Tr. 17-33.   As an initial matter, the ALJ found that Plaintiff had not attained age 22 as of February 8, 2012, the alleged onset date.   Tr. 19.   At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 8, 2012, the alleged onset date.   *Id.*   At step two, the ALJ found that Plaintiff has the following severe impairments: history of partial complex seizures/pseudoseizures with vertigo and episodic headaches, depression and anxiety.   Tr. 20.   At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments

that meets or medically equals the severity of one of the listed impairments in 20

CFR Part 404, Subpart P, Appendix 1." *Id.*

The ALJ then found:

[Plaintiff] has the [RFC] to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) that includes lifting and carrying up to 50 pounds occasionally and 25 pounds frequently, as defined in the Dictionary of Occupational Titles (DOT) and the regulations. If someone can do medium work, it is opined that this person can also perform light and sedentary work that are inclusive within this exertional level. There are no limits for sitting in an eight-hour workday, with standing and/or walking for up to six hours in an eight-hour workday. [Plaintiff] is capable of performing all postural functions with the exception of climbing of ladders, ropes and scaffolds. Secondary to her history of right shoulder issues and in affordance of the benefits of doubt, the claimant is to perform no overhead lifting, no overhead carrying and no overhead reaching with the bilateral upper extremities. [Plaintiff] is to perform no work that would involve hazardous situations such as work at unprotected heights or work around dangerous machinery that may cause harm to self or others. Secondary to a history of asthma, she is to avoid concentrated exposure to respiratory irritants such as fumes, odors, smoke, gases and poor ventilation. She is to avoid concentrated exposure to extremes of heat, humidity and cold temperatures. She retains the capacity to understand, remember and carry out simple instructions and perform simple routine and repetitive tasks as consistent with unskilled work. In the course of work, she is to have no contact with the public and only occasional contact with coworkers and supervisors, occasional being defined as occasional interaction and coordination but not necessarily proximity to the same.

Tr. 22. Next, the ALJ found that Plaintiff has no past relevant work. Tr. 31. At

step five, considering Plaintiff's RFC, age, education, and work experience, the ALJ

found that jobs exist in significant numbers in the national economy that Plaintiff

could perform. Tr. 31-32. Thus, the ALJ concluded that Plaintiff has not been

under a disability from February 8, 2012 through the date of the decision. Tr. 32.

Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which was denied on April 27, 2016. Tr. 1-3. Accordingly, the ALJ's December 12, 2014 decision is the final decision of the Commissioner. Plaintiff filed an appeal in this Court on June 8, 2016. Doc. 1. Both parties have consented to the jurisdiction of the United States Magistrate Judge, and this matter is now ripe for review. Docs. 18, 19.

## III. Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).[3] The Commissioner has established a five-step sequential analysis for evaluating a claim of disability. *See* 20 C.F.R. §416.920. The Eleventh Circuit has summarized the five steps as follows:

---

[3] The Court notes that after Plaintiff filed her applications and the ALJ issued the decision, certain Social Security rulings and regulations have been amended, such as the regulations concerning the evaluation of medical opinions and evaluation of mental impairments. *See e.g.*, 20 C.F.R. §§ 404.1520a, 404.1520c and 404.1527 (effective March 27, 2017); SSR 16-3p, 2016 WL 1119029 (March 16, 2016). The Court will apply rules and regulations in effect at the time of the ALJ's decision, unless regulations specify otherwise. *Green v. Soc. Sec. Admin., Comm'r*, — F. App'x —, 2017 WL 3187048, at *4 (11th Cir. July 27, 2017) (in reviewing the ALJ's decision, refusing to apply SSR 16-3p retroactively because "administrative rules are not generally applied retroactively."); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("[C]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."); 20 C.F.R. § 404.1527 (effective March 27, 2017) ("For claims filed . . . before March 27, 2017, the rules in this section apply."). *See also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (holding that when the Appeals Council denies review of the ALJ's decision, appellate courts review the ALJ's decision as the Commissioner's final decision).

(1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform [her] past relevant work; and (5) if not, whether, in light of [her] age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (citing 20 C.F.R. §§ 416.920(a)(4), (c)-(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011)). The claimant bears the burden of persuasion through step four; and, at step five, the burden shifts to the Commissioner. *Id.* at 933; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

The Eleventh Circuit has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings."

*Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) (citing *Black Diamond Coal Min. Co. v. Dir., OWCP,* 95 F.3d 1079, 1082 (11th Cir. 1996)). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015) (citing *Grant v. Richardson,* 445 F.2d 656 (5th Cir.1971)). The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

## IV. Discussion

The Court first addresses the ALJ's credibility determination of Plaintiff.

### a. Whether the ALJ properly evaluated Plaintiff's credibility

Plaintiff argues that the ALJ erred in assessing her credibility. *See* Doc. 24 at 13-15. Plaintiff first takes issue with the ALJ's finding that "there may be a factor

of 'exaggeration' in Plaintiff's presentation in her doctor visits." *Id.* at 13 (citing Tr. 29). Plaintiff states that "no acceptable medical source has issued such a finding." *Id.* at 13-14. Additionally, Plaintiff points to multiple instances in the record where she is noted to have "conversion disorder." *Id.* at 14. Plaintiff states that "conversion disorder" is "a mental disorder which would cause Plaintiff to genuinely have physical manifestations caused by stress, or other psychological factors." *Id.* (citing Tr. 773, 812). Plaintiff argues that "[i]t is improper for the ALJ to penalize Plaintiff's credibility due to the presence of this legitimate mental disorder." *Id.*

Plaintiff next disagrees with the ALJ's finding that her testimony was not totally reliable, in part, because her description of daily activities "did not suggest significant limitations." *Id.* (quoting Tr. 27). For instance, Plaintiff argues that the ALJ "disregarded the fact that Plaintiff's parents have been acting as primary caretakers for [Plaintiff's] baby." *Id.* (citing Tr. 31). Plaintiff contends that the ALJ incorrectly found that her parents' position as primary caretakers of her baby was due to her transportation issues. *Id.* (citing Tr. 31). Plaintiff argues that the ALJ's finding is illogical and does not state what the ALJ believed to be her parents' motivation for taking care of her child, other than transportation issues. *Id.* Plaintiff argues that, "[c]learly, it is very unlikely a mother would give up primary custody of her child simply because of transportation issues." *Id.* Thus, Plaintiff contends that the ALJ's findings in this regard are not supported by substantial evidence. *Id.*

Additionally, while Plaintiff concedes that "it is proper for the ALJ to consider

a claimant's daily activities in assessing work capacity," Plaintiff argues that "it is not proper to discredit a claimant's medically supported testimony concerning functional limitations based on routine daily activities." *Id.* Here, Plaintiff contends that the activities relied upon by the ALJ to discredit her – listening to music, watching television, feeding pets, helping out around the house and other routine activities – "are not consistent with the ability to perform regular and continuing work activity." *Id.* (citing Tr. 30). Instead, Plaintiff argues that the fact that "she attempted to work on a part time basis during the relevant time period, but was not successful" and that she "lost her employment due to excessive absences related to medical conditions" are more probative of her functional abilities with respect to work. *Id.* at 14-15 (citing Tr. 27-28).

In sum, Plaintiff argues the ALJ erred in assessing her credibility and the RFC. *Id.* Thus, Plaintiff argues that "the denial of the claim is not supported by substantial evidence" and that "[r]eversal of the ALJ [sic] decision is appropriate for proper consideration of the Plaintiff's testimony and submissions concerning her limitation in light of the medical evidence of record." *Id.*

Conversely, the Commissioner argues that "the ALJ properly considered Plaintiff's subjective complaints of disabling symptoms, together with the other evidence, in evaluating her claim." Doc. 27 at 18 (citing Tr. 18-22). The Commissioner contends that substantial evidence supports the ALJ's credibility determination and that "[t]he medical records and other evidence . . . do not indicate that Plaintiff's condition was as limiting as she alleged." *Id.* at 19 (citing Tr. 22-30).

Specifically, the Commissioner points to the ALJ's statement that the record suggested Plaintiff was malingering. *Id.* at 20 (citing Tr. 29). The Commissioner notes that, "[d]uring an emergency room visit in April 2014, Plaintiff appeared to feign hyperventilating." *Id.* (citing Tr. 29, 979). The Commissioner further states that treatment providers noted "Plaintiff's arm tic had an element of voluntary movement and that it went away when she slept." *Id.* (citing Tr. 29, 769-70). Additionally, as noted by the ALJ, the Commissioner states that when Plaintiff presented to Paula Bowman, Psy.D., for a psychological and memory evaluation on July 29, 2014, "Plaintiff had very poor hygiene, even though no other medical record ever reflects that Plaintiff had poor hygiene." *Id.* (citing Tr. 29, 1033). Thus, the Commissioner contends that, "as noted by the ALJ, there may be a factor of exaggeration in Plaintiff's visits to the doctor." *Id.*

The Commissioner further contends that the ALJ properly considered Plaintiff's activities. *Id.* (citing Tr. 37, 40). The Commissioner states that "[a]lthough not dispositive, a claimant's activities may show that the claimant's symptoms are not as limiting as she alleged." *Id.* (citing 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); SSR 96-7p; *Dyer*, 395 F.3d at 1210; *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987)). The Commissioner states that Plaintiff did not have restrictions on her activities of daily living, which is evidenced by the fact that "she enjoyed watching TV, listening to the radio, reading, going grocery shopping with her fiancé (now husband), watching cartoons on television, and perusing Facebook." *Id.* (citing Tr. 21). The Commissioner contends that the ALJ correctly

found that these "activities reflect that Plaintiff may not be as disabled as she alleged." *Id.* (citing Tr. 29). The Commissioner argues, therefore, that "substantial evidence from the record supports the ALJ's assessment of Plaintiff's subjective complaints." *Id.*

In reviewing this issue, the Court notes that credibility determinations are the province of the ALJ, and reviewing courts may "not disturb a clearly articulated credibility finding supported by substantial evidence." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *Foote*, 67 F.3d at 1562. When assessing the credibility of subjective complaints, an ALJ considers: (1) evidence of an underlying medical condition; and (2) objective medical evidence either (a) confirming the severity of alleged symptoms, or (b) indicating that the medical condition could be reasonably expected to cause symptoms as severe as alleged. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

If objective medical evidence does not confirm the severity of the alleged symptoms but indicates that the claimant's impairments could reasonably be expected to produce some degree of pain and other symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on her ability to work. *See* 20 C.F.R. § 404.1529(c)(1); *Wilson*, 284 F.3d at 1225-26; *Foote*, 67 F.3d at 1561. The ALJ then compares the claimant's statements with the objective medical evidence, the claimant's daily activities, treatment and medications received and other factors concerning limitations and restrictions the symptoms

cause. *See* 20 C.F.R. § 404.1529(c). "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (internal citations omitted). Nonetheless, "[t]he question is not . . . whether the ALJ could have reasonably credited [a claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x. 935, 939 (11th Cir. 2011).

In this case, the ALJ discounted Plaintiff's credibility, in part, based on "suggestions of malingering in the record." Tr. 29. In support, the ALJ cited an emergency room visit in April 2014. *Id.* (citing Tr. 979). The ALJ found that this emergency room visit suggested that Plaintiff "appeared to be feigning hyperventilation." *Id.* (citing Tr. 979). Additionally, the ALJ cited records from Tucker Greene, M.D., a physician who examined Plaintiff during her emergency room visit on February 6, 2012, and concluded the records showed that Plaintiff's "arm tic had an element of voluntary movement and that it went away when she slept." *Id.* (citing Tr. 773). Additionally, the ALJ discussed the medical record of William J. Carracino, Jr., M.D., of Florida Neurology Group, who "initially questioned [Plaintiff's] seizures and thought she might have conversion disorder, prior to the abnormal EEG." *Id.* (citing Tr. 502). Thus, the ALJ concluded that "[t]here may be a factor of exaggeration in the claimant's presentation in her doctor visits." *Id.*

Upon consideration, the Court cannot find that the ALJ properly evaluated Plaintiff's credibility, specifically her finding that Plaintiff may be malingering and/or

exaggerating her symptoms. *See* Tr. 29. Specifically, Plaintiff notes that, in multiple places in the record, she was diagnosed with "conversion disorder." Doc. 24 at 4-5, 14 (citing Tr. 593, 773, 802, 812). "Conversion reaction, or conversion disorder, is a condition in which psychological stress is shown in physical ways, typically affecting movement or senses, such as the ability to walk, swallow, see, or hear." *Morrison v. Comm'r of Soc. Sec.*, 660 F. App'x 829, 831 n.1 (11th Cir. 2016)). Conversion disorder or conversion reaction causes "symptoms or deficits affecting voluntary motor or sensory functioning and suggesting physical illness but produced by conversion," as "[a] person's anxiety is 'converted' into any of a variety of somatic symptoms such as blindness, deafness, or paralysis, none of which have any organic basis." *Lewis v. Astrue*, No. 4:08cv441-RH/WCS, 2009 WL 3256018, at *11 n.11 (N.D. Fla. Oct. 6, 2009)). "The anxiety may be the result of an inner conflict too difficult to face, and symptoms are aggravated in times of psychological stress." *Id.*

Other courts have addressed an ALJ's credibility determination of a claimant when there is a presence of conversion disorder. For instance, in *Bright-Jacobs v. Barnhart*, the court reversed and remanded the case, finding "that the ALJ failed to properly evaluate the claimant's credibility" when the claimant had a somatization disorder. 386 F. Supp. 2d 1295, 1333 (N.D. Ga. 2004).[4] In *Bright-Jacobs*, the ALJ found that "the claimant's testimony regarding the pain and limitations was not fully

---

[4] A somatization disorder is a "a chronic disorder characterized by multiple somatic symptoms in multiple organ systems." *Bright-Jacobs*, 386 F. Supp. 2d at 1306. It is also described as "the conversion of an emotional, mental or psychosocial problem to a physical complaint." *Smorto v. 3DI Techs. Inc.*, 393 F. Supp. 2d 1304, 1306 n.5 (M.D. Fla. 2005). In this context, "somatization" and "conversion" appear to be synonymous terms.

credible." *Id.* The court generally agreed with that finding, stating that the claimant's testimony generally contradicted the objective medical evidence. *Id.* In light of the contradiction, the court stated that "in the abstract, an ALJ could find that her testimony is not credible." *Id.* Nonetheless, the court indicated that this result "is precisely the nature of her disabling somatization disorder: the claimant actually believes that she is suffering from disabling medical conditions even though such medical conditions are illusory or less severe." *Id.* The court found that "in order to properly evaluate the claimant's credibility, the ALJ must determine whether the claimant actually believes she suffers from the enumerated severe disabling medical conditions." *Id.* Thus, because the ALJ failed to ascertain "whether the alleged medical problems were real to the claimant," the court held that the ALJ committed reversible error by failing to properly evaluate the claimant's credibility. *Id.*

A further example is *Carradine v. Barnhart*, 360 F.3d 751 (7th Cir. 2004) (Posner, J.). In *Carradine*, the Seventh Circuit reversed and remanded the case, finding that the ALJ improperly "based his credibility determination on serious errors in reasoning rather than merely the demeanor of the witness." *Id.* at 754. At the administrative level, the ALJ found that the claimant was exaggerating, citing results from psychological testing indicating somatization. *Id.* Contrary to the ALJ's finding that somatization implied that the claimant was exaggerating her symptoms, the court found that the psychological testing results implied that the source of the claimant's pain was psychological rather than physical. *Id.* The court

noted that "[i]f pain is disabling, the fact that its source is purely psychological does not disentitle the applicant to benefits." *Id.* The Court stated:

> Pain is always subjective in the sense of being experienced in the brain. The question whether the experience is more acute because of a psychiatric condition is different from the question whether the applicant is pretending to experience pain, or more pain than she actually feels. The pain is genuine in the first, the psychiatric case, though fabricated in the second. The cases involving somatization recognize this distinction. The administrative law judge in our case did not.

*Id.* at 754-55 (internal citations omitted).

The court concluded that the ALJ's misunderstanding was further demonstrated by his remark that the "medical examiners and treating physicians have not been able to find objective evidence to support [the claimant's] extreme account of pain and limitation." *Id.* at 755. The court indicated that the inability to find objective evidence was consistent with a psychological origin of pain. *See id.* In sum, the court could not overlook "the discrepancy between [the claimant's] purely physical ailments, which although severe were not a plausible cause of disabling pain, and the pain to which [the claimant] testified." *Id.* Thus, the court found that the ALJ "failed to take seriously the possibility that the pain was indeed as severe as [the claimant] said but that its origin was psychological rather than physical." *Id.* Moreover, the court found that the evidence the claimant presented "went far beyond a merely self-serving, uncorroborated claim of pain by a malingerer." *Id.* Thus, the court reversed and remanded the case. *Id.* at 756.

Of note, however, the court specifically declined to find that the claimant was entitled to benefits. *Id.* Moreover, the court alluded to the possibility that the

claimant may have been exaggerating her pain. *Id.* Nonetheless, the court found that "an administrative agency's decision cannot be upheld when the reasoning process employed by the decision maker exhibits deep logical flaws, even if those flaws might be dissipated by a fuller and more exact engagement with the facts." *Id.* (internal citations omitted).

Another illustrative case is *Tedford v. Colvin*, No. C12-4076-LTS, 2013 WL 3338477, at *16 (N.D. Iowa July 2, 2013). In *Tedford*, the court reversed and remanded the decision of the Commissioner, finding that the ALJ "failed to consider the impact of somatization disorder when assessing [the claimant's] credibility and her RFC." *Id.* There, the court acknowledged the ALJ's express finding that the claimant's allegations were not credible. *Id.* Nonetheless, the court noted that the ALJ's reasons for discrediting the claimant, her exaggeration of symptoms and the lack of objective medical evidence supporting symptoms, were "indicative of the mental impairment itself." *Id.* The court found the ALJ's treatment of the claimant's credibility to be troubling because, although the ALJ recognized that the claimant had pseudoseizures and that the claimant's symptoms were "probably psychogenic," the ALJ nonetheless used the psychological nature of the claimant's symptoms as a basis to discredit her. *Id.* The court concluded that the ALJ did not adequately consider the claimant's mental impairment, holding that "[e]xaggeration of symptoms and lack of objective medical evidence supporting physical symptoms are not good reasons for discrediting a claimant diagnosed with somatization disorder." *Id.*

Another applicable case is a decision from this district, *Fleming v. Commissioner of Social Security*. *See* No. 8:15-cv-1517-T-MRM, 2016 WL 4890218 (M.D. Fla. Sept. 16, 2016). In *Fleming*, the Court reversed and remanded the decision of the Commissioner when the ALJ failed to properly evaluate the plaintiff's credibility when she had been diagnosed with a conversion and/or somatization disorder. *Id.* at *9-*10. There, the ALJ found the plaintiff's testimony not to be entirely credible and cited objective medical findings in support. *See id.* at *7. Upon review, the court agreed with the ALJ's assessment that the medical evidence of record contradicted the plaintiff's testimony regarding her strokes and alleged symptoms from them. *Id.* at *8. Nonetheless, a history of conversion disorder was noted throughout the record. *Id.* Moreover, despite the contrary medical evidence of record, the plaintiff's testimony appeared to show that she actually believed she suffered from strokes and the alleged symptoms from them. *Id.* The court stated that "these are exactly the circumstances that would be expected from someone with a conversion and/or somatization disorder." *Id.* (citing *Carradine*, 360 F.3d at 754; *Bright-Jacobs*, 386 F. Supp. 2d at 1333; *Tedford*, 2013 WL 3338477, at *16). Ultimately, the court could not conclude that the ALJ's credibility determination was based on substantial evidence when it was unclear whether or not the ALJ considered the possible effects of the plaintiff's conversion and/or somatization disorders. *Id.* at *9 (citing *Bright-Jacobs*, 386 F. Supp. 2d at 1333; *Tedford*, 2013 WL 3338477, at *16). The court found that "in order to properly evaluate [the plaintiff's] credibility, the ALJ must determine whether [the plaintiff] actually believes she suffers from her

allegedly severe disabling medical conditions." *Id.* (citing *Bright-Jacobs*, 386 F. Supp. 2d at 1333). Nonetheless, because the ALJ failed to ascertain whether the alleged medical problems were real to the plaintiff, the court found that the ALJ "committed reversible error by failing to properly evaluate the plaintiff's credibility." *Id.* (citing *Bright-Jacobs*, 386 F. Supp. 2d at 1333).

As the cases above make clear, the presence of conversion disorder implies that symptoms are psychological in nature, and they may not be under the volition of the claimant. Specifically, in *Bright-Jacobs*, the court noted that the claimant's somatization disorder suggested the claimant actually believed that she was suffering from disabling medical conditions even though the medical conditions were illusory or less severe. 386 F. Supp. 2d at 1333. Similarly, in *Carradine*, the Seventh Circuit found that the claimant's psychological test results showing somatization implied the source of the claimant's pain was psychological not physical. 360 F.3d at 754-55. In *Tedford*, the court noted that the claimant's pseudoseizures and her symptoms were probably psychogenic. 2013 WL 3338477, at *16. Finally, in *Fleming*, while the medical evidence of record contradicted the plaintiff's testimony, the plaintiff nonetheless apparently believed that she actually suffered from the alleged symptoms. 2016 WL 4890218, at *8-9.

Here, the ALJ questioned the authenticity of Plaintiff's seizures and arm tic. *See* Tr. 29. Nonetheless, the record suggests that Plaintiff's conversion disorder is specifically associated with both her seizures and her arm tic. *See* Tr. 593, 773, 802. By definition, conversion disorder is psychological in nature. *See Morrison*, 660 F.

App'x at 831 n.1. Thus, while appearing voluntary or fake to others, the symptoms exhibited by Plaintiff may have, in fact, been outside of Plaintiff's voluntary control. *See id.* Moreover, Plaintiff's testimony suggests that she actually believes she suffers from her alleged impairments. *See, e.g.*, Tr. 91 (indicating that her seizures are the primary reason she feels she cannot return to work). In discounting Plaintiff's credibility, however, the ALJ did not address the possibility that Plaintiff's actions and symptoms may have been outside of her control. *See* Tr. 29. Instead, the ALJ concluded that Plaintiff may have been malingering or exaggerating her symptoms. *See* Tr. 29.

In the four cases cited above, the court reversed and remanded the decision of the Commissioner when the ALJ did not consider the effects of the conversion/somatization disorder. *See Carradine*, 360 F.3d at 754; *Fleming*, 2016 WL 4890218, at *9; *Bright-Jacobs*, 386 F. Supp. 2d at 1333; *Tedford*, 2013 WL 3338477, at *16. The Court finds these cases persuasive and, similarly here cannot conclude that the ALJ's credibility determination is based on substantial evidence when it is unclear whether the ALJ considered the possible effects of Plaintiff's conversion disorder on her alleged symptoms.

In making this finding, the Court finds the decision in *Tedford v. Colvin* to be particularly persuasive. *See* 2013 WL 3338477, at *16. Similar to *Tedford*, the ALJ here expressly recognized that Plaintiff had pseudoseizures, finding them to be a severe impairment at step two. *See* Tr. 20. Nonetheless, as in *Tedford*, the ALJ here failed to consider the impact of conversion disorder when assessing Plaintiff's

credibility and her RFC. *See* Tr. 29. Specifically, like *Tedford*, the ALJ here never considered that her reason for discrediting Plaintiff – Plaintiff's exaggeration of symptoms – may have been indicative of Plaintiff's mental impairment itself. *See* Tr. 29.

Moreover, in *Tedford*, the court found it particularly troubling the ALJ acknowledged that the claimant had pseudoseizures and the claimant's symptoms were "probably psychogenic" but the ALJ nonetheless used the psychological nature of the claimant's symptoms as a basis to discredit her. *See* 2013 WL 3338477, at *16. Here, in making her credibility determination of Plaintiff, the ALJ noted that Plaintiff may have conversion disorder. Tr. 29. By noting the conversion disorder, the ALJ implicitly acknowledged that Plaintiff's impairments could have been psychogenic in nature. *See Tedford*, 2013 WL 3338477, at *16. Despite this acknowledgement, the ALJ nonetheless discredited Plaintiff for malingering and exaggeration of symptoms. *See* Tr. 29. By doing so, the ALJ here, like *Tedford*, appears to use the psychological nature of Plaintiff's impairment as a basis to discredit her. *See id.* Similar to *Tedford*, however, the Court finds that malingering and exaggeration of symptoms are not good reasons to discredit Plaintiff when she has conversion disorder. *See Tedford*, 2013 WL 3338477, at *16. Accordingly, because the ALJ did not adequately consider the nature of Plaintiff's conversion disorder, the Court finds that the same result from *Tedford* – reversing and remanding the decision of the Commissioner – is dictated here. *See id.* at *16-*17.

In sum, the Court finds that the ALJ failed to properly evaluate Plaintiff's credibility. Moreover, because the credibility determination was a key part of the ALJ''s RFC assessment, the Court finds that the ALJ committed reversible error by failing to properly evaluate Plaintiff's credibility. *See Fleming*, 2016 WL 4890218, at *9; *Tedford*, 2013 WL 3338477, at *16. On remand, the Commissioner must evaluate Plaintiff's conversion disorder in assessing Plaintiff's credibility and RFC, including taking any necessary steps to complete the administrative record. *See Fleming*, 2016 WL 4890218, at *9.

As with past decisions, however, the Court expressly declines to make findings as to Plaintiff's credibility. *See Carradine*, 360 F.3d at 756; *Fleming,* 2016 WL 4890218, at *8-9. In fact, there is a distinct possibility that Plaintiff was exaggerating her symptoms and/or malingering. *See Carradine*, 360 F.3d at 756. Nonetheless, the ALJ must evaluate Plaintiff's conversion disorder in determining Plaintiff's credibility, even if that re-evaluation leads to the same conclusion. *See id.*

### b. *Plaintiff's remaining arguments*

Plaintiff also argues that the ALJ erred in the following respects: in evaluating the opinion evidence; and in evaluating Plaintiff's RFC. Because this case must be remanded for consideration of Plaintiff's credibility, the Court need not address these arguments.

## V.    Conclusion

Upon review of the record, the Court concludes that the ALJ failed to apply the proper legal standards and that the ALJ's determination that Plaintiff is not disabled is not supported by substantial evidence.

ACCORDINGLY, it is hereby

**ORDERED:**

1.    The decision of the Commissioner is **REVERSED** and this matter is **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for the Commissioner to:

> A.    Evaluate Plaintiff's conversion disorder in assessing Plaintiff's credibility;
>
> B.    Re-evaluate the entire medical evidence of record.
>
> C.    Make any other determinations consistent with this Opinion and Order, or in the interests of justice.

2.    The Clerk of Court is directed to enter judgment in favor Plaintiff, Amber Marie Orlando, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 29th day of September, 2017.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record